Good morning. May it please the court. I'm James Dickens. I represent Fred Meyer. And we are here in our appellate position for the purpose of asking the court to set aside the issues submitted to the jury and the district court. The district court decisions were very inconsistent. The district court described the Alaska law on this issue of the covenant of good faith and fair dealing as murky, so there's understandable confusion, but recognizing that the Ninth Circuit can resolve it, so we're here to have the Ninth Circuit resolve it. There were inconsistent rulings. After some back and forth on the eve of trial, the district court declared, and this was proper, that if Johnson was terminated in order to replace her with a sweetie, this did not violate Alaska public policy, it was not unconstitutional, and there was no disparate treatment. Therefore, since that covenant has two prongs, this was the objective prong, she could not prove either one of those three prongs, that is, public policy violation, non-constitutional, or disparate treatment. Despite that, then, the district court said, well, even though there's no violation of the objective prong, as a matter of law, I'm going to say that on the subjective prong, if Johnson's supervisor terminated her in order to replace her with a sweetie, that was improper and bad faith. It's our contention before this Court, that is wrong as a matter of law under Alaska law. Before I forget, I'd like to reserve four minutes for rebuttal, Your Honor. Okay. That's good for the clerk to know. All right. Now, under the subjective prong of the test, it seems to me that Alaska has laid out pretty clearly that one cannot fire someone from getting some share of the profits. That's correct, Your Honor. That's the Mitford v. De La Salle case. Correct, the Mitford v. De La Salle case. But then Alaska's also said that firing somebody to avoid a personality conflict doesn't quite merit the subjective motive. That is correct. In the Arra v. Seekins case and in the subsequent footnote, they even went so far as to say that if someone was terminated, either because of personality conflict, that was not a violation of the objective test. And also they said that would not be a violation if there was hatred between the parties. They cited the DuPont v. Demore's case out of Delaware. This is where hatred or ill will. That's correct. But they did say in the Arra v. Aviation, and I don't know if that's exactly the way they say it in Alaska, that an employer's conduct must actually be motivated by an improper or impermissible objective. They did. And so if we look at that instruction number 17, the first part of that instruction is certainly an employer violates the covenant of good faith when it acts with an improper motive. It's the second part you object to. Your Honor, it is. The first paragraph is a statement of what comes out of Midford and the subsequent cases. However, Midford stated, and it's the only case that holds on a subjective prong any claim going back, is that there had to be a breach of some economic interest. And that was never an issue that we proposed during instruction number 10 that said if you want to go this way, Your Honor, we don't think it should be, but if you want to submit this to the jury on the subjective prong, then you must have a contention that there was something other than these unfair public policy arguments raised by the plaintiff. The plaintiff never cited one case in support of this jury instruction. The district court simply held as a matter of law it's improper and bad faith if you terminate an employee for the purpose of hiring another employee in whom you have a personal interest. Well, let me ask you. Suppose my son has just graduated from college and now he needs a job. We understand that, Your Honor. Can I hire him? No. I mean, yes, you can hire the son, yes. Can I put my son in there? Yes, you can. How about my good friend? Yes, you can. How about if I like redheads? Yes, you can. Okay. Your Honor, what you see in the EEOC guidelines, they said that's not sex discrimination. There is some difference, and I've cited the cases at length that state that it is not unlawful to hire a protege, son-in-law, daughter-in-law, baseball player, whatever. That's not unlawful. Furthermore, that would not be in the subjective prong. That would be the objective prong. That would be disparate treatment or against public policy. We have a uniformity of cases saying it's not against public policy to hire someone on those bases, but that's not the subjective prong. It's a much more limited situation under the Midford standard. Well, wasn't the district court really just pointing out to the jury that if all you're doing is firing somebody in the hopes of having a romantic interest, that that's an improper motive? Weren't they just elongating what they had said in the first paragraph of the instruction? Yes, he was saying as a matter of law. Well, I think, counsel, as a matter of law, if you fire this person, it's... What would he have needed to have in order to put that statement in there? A case that said it? No, there are no cases that say it. All the cases hold to the contrary. I mean, it's in... Did you try to get the Alaska Supreme Court to give him a... I think I remember reading that. Yes, you did. What happened is that on the eve of the first trial, in October of 2007, the judge who had gone back and forth on this finally said, okay, there's no case here based on the objective standard, based upon a breach of public policy. I'll narrow it to that. Or unconstitutional disparity impact. But he said it's sort of an area I'm not quite clear, so let's see if the Alaska Supreme Court will take it. It was certified by the Alaska Supreme Court, and they didn't take it. Now, does that mean that they would have decided it that way? Does that mean they thought the district court had decided it correctly? We think that's right. Whatever it is, they did not take the case. And so then we went back to trial. We had a series of differing views back and forth. The judge, I think, ruled several times. But on the eve of trial, he finally said, okay, the objective standard is out. That's a tort claim. There's no breach of public policy. So if you've already ruled, as a matter of law, there's no breach of public policy under the objective standard, the subjective standard says you must be denying the plaintiff an economic benefit. And in Mitford, that was denial of profits. That was not submitted to the jury. We've got here, as a breach of law, as a matter of law, if the supervisor terminates the employee to replace with anyone, the way I read this, of personal interest, then that's a breach of public policy. And I kept arguing, as I still am, it's inconsistent. You can't do that. Is this your best argument, or is your argument about not setting aside the jury verdict a better argument? Well, the more narrow argument, and one which I think was reasonable to rule on, is this. If the jury instructs, well, we have jury instruction 17 here. It says if a supervisor terminates the employee to hire another employee, as a matter of law, that's wrong. Now, the undisputed evidence is this. We argue that no reasonable jury could have found that Johnson's supervisor, Jaime San Miguel, terminated her. Absolutely could not. San Miguel was Johnson's supervisor. He didn't have authority to terminate her. He's just the ---- I'm sorry. Isn't that buying into the validity of the instruction? I thought what Judge Smith was asking is what's your best argument. That's true. You didn't quite answer my question. Your Honor, I'm sorry. We have two arguments which I think are strong. The best argument, well, both I think are equally strong. I think the first one is the matter of law. That's a matter of law issue. That there's no claim for breach of the covenant to replace someone with someone else of whom you have a personal interest under the subjective prong. That is so narrow. There's only been one case in 27 years, Mitford, which held that there was a case could go forward where you deprive an employee of an employment benefit. Mr. Diggins, did you submit a proposed instruction that you thought would have been adequate or proper on the objective prong? The objective had been dismissed. You mean the subjective prong? I'm sorry. I misspoke. On the subjective prong. I did. I absolutely did. It's in our brief. It's proposed during instruction number 10 that was rejected by the court. I went through this and tried to make sure the record was clear. We disagreed with the instruction that was proposed. We submitted the alternate instruction, which had paragraph one somewhat the same, but paragraph two said that you would have to find that Johnson was deprived of a benefit of the employment agreement. That was rejected. And there just are no other cases. When you look at cross-appellants briefs by Johnson, all the cases they cite are on the objective standard. They talk about the issue of unfairness. They talk about an implied contract never pled. They talk about public policy. But all the public policy issues were discrimination claims already dismissed. So there's no public policy. That's the law of the case. That's out. I would be interested to hear what case they think supports the subjective view or supports the jury instructions given. Expectation of long employment is not an issue in Alaska. It doesn't state a claim. There's no property right in continued at-will employment, Ramsey v. City of Sandpoint. And I want to go back to this. On October 5, 2007, before the issue was certified to the Alaska Supreme Court, district court held, quote, there's no explicit public policy in Alaska prohibiting an employer from discharging at-will employee in order to replace her with a hopeful romantic interest. How can you reconcile that with the jury instruction that this jury was permitted to address? It's on the subject of hiring someone else with whom you might have an interest. You've spent a lot of time on this first issue. Is there anything you want to say about any of the other issues? I do. I want to address the issue on the no reasonable jury could have found that her supervisor terminated her. That's where I began briefly, Your Honor, and I appreciate that. That's the one where I said is that other argument your best one? Can I just switch gears altogether and ask you on a prejudgment interest question if it were reached? Is it your position that Alaska covers non-PI matters that the Alaska statute reaches? Well, Your Honor, the way I read the Alaska statute is that it distinguishes between past and future damages, and if you're submitting this. For a contract matter, for matters other than personal injury? Yes. And where does that come from? Well, it comes from the statute and the cases. And as I recall, one of the cases was talking about a contract. If you have future damages, it needs to be reduced to present value, so that's the same thing. And it was the plaintiff's obligation to submit a. Well, the damages need to be reduced to a present value, but what about the prejudgment interest? Well, the prejudgment interest should only apply to past damages up to the date of trial. Okay. Maybe I'm not being clear. As I read the statute, the statute applies to personal injury claims. Is there any authority that it applies more broadly than to PI claims? Yes. There was one case we cited which addressed an employment situation. If I don't recall offhand, but it said that in a discrimination matter, they segregated the damages so that future damages did not have prejudgment interest. Okay. And I want to say. I'm just noting your time is really running. You want to save a little bit. You might want to. I do. Thank you, Your Honor. Thank you very much. If it please the Court, my name is Douglas Mertz. I represent Myrna Johnson. Our position here is that the basic issue is whether a middle-aged worker must live in fear that she will be fired and her career ended because a supervisor wants to replace her with a younger. Let me ask you the same question I asked earlier. Would it be a breach of the covenant of good faith if I fired you? There's a gray area here. I believe the Alaska Supreme Court would say that if they were simply replacing one worker with your son because you wanted to give your son a benefit, that that probably would pass muster. How about if he was a good friend? Probably the same thing, although we are dealing here in an area in which the Supreme Court has simply not ruled with any precision. How about better looking and, therefore, better able to sell the goods? That is where we draw the line because when you get into what some people have called lookism, replacing somebody because of their inferior looks, replacing them with a better looking person, then you get into questions of sex discrimination, potentially age discrimination. No, I'm replacing a female worker. But that's not what's being pursued. That's not what you're pursuing here. You're pursuing a claim it's an at-will employee who's, you're saying, breached the covenant of good faith and fair dealing. We're not talking about sex discrimination. Actually, we believe we are very much because we see this as a violation of the covenant of good faith and fair dealing. Yes. Through a public policy violation, and the public policy is encompassed by the- But wait, it can't be gender discrimination because you- Right, it's not gender discrimination. But we know under both federal and state law that sex discrimination encompasses the entire panoply of things having to do with decision making on the basis of sex issues, not simply male versus female. Well, then you should have sued for that. I mean, this is not a sex discrimination case. We believe- As I understand it, you're pursuing a breach of covenant of good faith and fair dealing on an objective theory. Yes. Subjective. I'm to keep saying that. Just pay attention to what I mean, not what I say. We believe that right from the start, this has been a sex discrimination and age discrimination case, and that the pleadings encompass that. In Alaska law, the covenant is a major factor because it is what limits to a great degree- on the objective prong and said this is not something you can go forward on. All you've got is the subjective form. And now I'm trying to find the case in Alaska which suggests that this would meet the subjective form or the subjective prong. I mean, we've got a case that says it's not enough on a personality conflict. It's not enough for a dislike or hatred or ill will. But it is enough if- and this is the only one I can find- if it has something to do with the benefits of the contract itself. But I find no Alaska case that says it's enough for subjective for what you have. If I'm going to talk about discrimination and all of that, if, in fact, there is a case, I'm in the objective prong. The problem that all of us deal with here is that the Supreme Court has confronted these legal issues only in a set number of factual context, and there is no factual context on all fours with this case. Therefore- Go ahead. Go ahead. You got it. Please. Judge Smith, go ahead. You're on. Okay. If the Alaska Supreme Court has said you can fire an employee because you don't like them or to avoid hostilities, the flip side of that is you can hire someone who you do like. Yes. I mean, what's the difference? The important factual distinction here is that in the case, in which the court made that statement, there was, in contrast here, there is no question about how the personality conflict would have affected the person's work. Here, the supervisor who had the problem with her, who wanted to replace her, said, I liked her. She was a great worker. There was no doubt about that. Yeah. He just liked somebody else better. He liked somebody else. I mean, isn't that just life? Well, that's where you get into the basic unfairness of replacing somebody because you wanted to pursue, sexually pursue, somebody else. But now you're talking about Victorian morality, aren't you? I mean, this is a bad thing. I frown upon it. But it's just a different degree of like, isn't it? No. I don't think it is a different degree of like when somebody sets up a worker so that you could replace her with somebody you wanted to pursue sexually. And what the judge did here was basically defer to the jury on whether that set of facts raises to the level of unfairness. Well, it doesn't seem to me he let the jury decide anything because if you look at instruction number 17, he declares that it is a breach of the good covenant of good faith and fair dealing. Your theory. Which he had no case law upon which to make that decision. He had nothing to do it, but he declared it and said, ladies and gentlemen of the jury, I'm hereby telling you, this is a breach. But then in the jury verdict form, he allowed them to agree or disagree by saying, was she terminated? And then if you say yes. You know, you're a very competent counsel, I'm sure, and you know that we just presume juries to follow the instruction of the judge. So why wouldn't they follow it? I mean, that's the worry. It's the problem of having a formula instruction. I mean, it better be absolutely right. I mean, it's a terribly crafted declaration to the jury in directing the verdict, basically. Let me ask you this. Let me change the theory. Why should the judge have allowed this verdict to go forward when there's absolutely no evidence here that the supervisor terminated this employee or had anything to do with the termination or that anything that he knew or didn't know or thought or didn't think was even communicated to the one who terminated the employee? Oh, there is direct evidence from it. We had the testimony of the human rights director of the whole company who, in fact, made the final decision that she relied on the input from the store manager and the apparel manager, the apparel manager being the one who had the. Well, I guess I have a tough time. I've searched this record pretty far. And it seemed to me that Lucas fired this employee without any knowledge of what was happening by the supervisor or even by Sayer. I believe we have cited to it, but in any case, we also know that she was appealed to by Ms. Johnson, never replied to her, even though Ms. Johnson was telling her that, in fact, the store's own policies for progressive discipline were not followed here, in fact, were ignored. Another indication of unfairness, basic unfairness, and, in fact, the Alaska Supreme Court has said that it violates the covenant to not follow your own internal policy for discipline and determination. As I understood it, Sayer told Johnson even before she left the meeting that leaving the meeting would be considered a voluntary resignation. And Ms. Johnson says that never happened. She said it emphatically, and the jury clearly believed her. Well, and as I understand, the employee responsibility handbook says the same thing. It does. If she leaves the meeting, she's going to be fired. It doesn't say if she leaves the meeting. It says if she walks off the job, basically. And in this case, she was doing what other supervisors had done and leaving the store to get over her extreme degree of upsetness. You're not really arguing to us, are you, that this jury instruction could be read to suggest that the store director or the female human services director were supervisors and then could terminate her? We are arguing, Your Honor, that the store acts through its employees, through the entire chain of employees, and as long as the decision-making was done by somebody who was informed by the person with the bias, then that qualifies as the store. Okay, if that's your argument, where did you make this argument to the district court? I'm sorry, I can't say. Where did you make that argument to the district court that you just made to me? Where did you make it to the jury? When did you argue that the store director or the female human services director had some romantic interest? You didn't make that argument. We never claimed that. You didn't make any argument. I mean, your only argument is that the supervisor had the romantic interest. The supervisor had the romantic interest and the employer, to use the word that's used in Instructant 17, the employer, the store, terminated her under unfair circumstances in violation of the covenant because they allowed the decision to be made on the basis of what Mr. San Miguel said. I have no further questions. Do you have any questions, Honorable Reimer? Do I? No. Do you want to make further arguments, sir? Just briefly on the question of whether it should have been allowed to go to the jury on a tort theory. The district court made the decision, which we consider anomalous, to allow her to seek to recover part of her damages, namely the lost wages, but not the rest of the damages, such as emotional distress and punitive damages. We believe the Alaska Supreme Court has said in several cases that this kind of situation should give rise to a tort in which one can claim the full panoply of damages. That was the Kinzel case and the Royst case. Is there any public policy in Alaska which prohibits an employer from discharging an at-will employee in order to replace her with somebody else? If it's done because he wants to pursue the somebody else sexually. What's your best case? The best we cannot look at. Best Alaska case. Case law here. About public policy. The case law has not been developed. On the other hand, we have all the cases we cited in which the court has said. I just want one good one because I look for one which had any public policy about this particular matter because you're really talking a public policy tort and I couldn't find it. Your Honor, in the series of cases in which the court has said. Have you got one good one? I don't have any cases because none have been decided directly on the question of sexual component in a termination decision. It simply has not arisen. You're essentially saying the court had to. The district court had to find. The district court had to find what Alaska might have done under Urey. The district court had to find what the law is by analogy to the cases the court has decided and it seems to me the strongest set of cases are the ones in which the court said that it violates public policy and creates a tort and violates the covenant to fire somebody for whistleblower activity or for participating in a workers' comp case. In both of those cases, the court noted that what the company did did not violate the letter of the law but that there was a general policy because of the statutes having to do with whistleblower protection on the one hand and workers' comp claimants on the other hand and therefore that created a policy not letter of the law that could be applied but policy and we have exactly the same sort of thing here because we have strong state as well as federal law protecting rights against sex discrimination and age discrimination and marital status discrimination. That it seems to me is a clear road map to the district court for finding that in this kind of situation the Alaska Supreme Court would say that there is a distinct public policy here to be protected and that what the company did was in violation of it. Thank you. Thank you. I'll be brief because that's what my time says I need to be. Yes. The same argument we're hearing on sustaining the jury verdict is based on public policy which was not the issue on that analysis under the subjective prompt. As we quote in footnote 8 in our opening brief, the EEOC has a guideline on what should be potential employer liability under title 7 for sexual favoritism. Preferential treatment toward a paramour and I add hope for a paramour or a spouse or a friend similar to nepotism is not unlawful. That's what the trial court declared. It dismissed all the discrimination claims. There were no discrimination claims left so there's no public policy. The case did not go to the jury on public policy. It went on subjective. They've cited nothing to support that decision. That decision should be set aside. This case should be sent back to the district court and have it dismissed. Appreciate the time. Thank you very much. Thank you for your argument, both of you. Cases 0835928 and 0835931 are hereby submitted.
judges: Walter, Rymer, Smith N. R.